UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                      Case No. 18-cr-20538
                          Hon. JUDITH E. LEVY

vs.


MARC ARMBRUSTER,

        Defendant.
_____/

APRIL NICOLE RUSSO
United States Attorney's Office
211 W. Fort Street; Suite 2001
Detroit, MI 48226
313-226-9129
Email: april.russo@usdoj.gov


STEFANIE LAMBERT JUNTTILA
Law Office of Stefanie L. Lambert, PLLC
500 Griswold Street, Ste. 2340
Detroit, MI 48226
(248) 270-6689
Email: attorneystefanielambert@gmail.com
_____/


## DEFENDANT, MARC ARMBRUSTER'S, MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

NOW COMES the Defendant, MARC ARMBRUSTER, by and through his attorney, STEFANIE LAMBERT JUNTTILA, and hereby respectfully moves this Court pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Defendant is in federal custody inmate Register Number: 19519-023 at the FCI Safford, in Safford, Arizona.

<u>PROCEDURAL BACKGROUND</u>

On August 10, 2018, the defendant was charged with the following felonies, Conspiracy to Receive Child Pornography, in violation of 18 U.S.C. Section 2252A(a)(2) and Conspiracy Access with Intent to View Child Pornography in violation of U.S.C. Section 2252A(a)(5)(b). (R. 15, Waiver of Indictment, PgID 57).

On August 27, 2018, Mr. Armbruster tendered a Plea pursuant to Rule 11 of the Criminal Rules of Procedure. (R. 19, PgID 63-86). The agreement provided that the defendant would plead guilty to Count One, that is, Conspiracy to Receive Child Pornography in violation of 18 U.S.C. Section 2252A(a)(2).

The plea agreement contained a factual basis that provided that between the dates of April 2, 2015 and March 1, 2018, the Defendant worked with at least six other adult males on an unmonitored website. The group's common objective was to lure minor females, between the ages of 8 and 17, to engage in masturbation while live streaming on web camera on

this website. The Defendant knew that several of the group members recorded this activity, and the other group members shared the recordings they made with him. Group members played different roles in their efforts to entice the minors they targeted. The Defendant, using the username JEREMY_FIVE, was primarily a "talker" for the group. In that capacity, he was one of the members in charge of trying to convince the minors to engage in masturbation by inserting objects (e.g. hairbrushes, toothbrushes, ect.) He, along with other group members, also provided directions to the minors as to how to do the sexual acts they were asking them to perform.

For example, on April 10, 2015, he along with other group members, enticed MV-20 (a minor who was then under the age of 14) to get on web camera and insert a marker into her anus while simultaneously inserting a curling iron into her vagina. The Defendant intended to help the group get MV-20 to engage in this activity and watched her engaging in it, knowing that she was under the age of 18 and that other group members were recording it. And, on April 4, 2015, the Defendant, along with other group members, enticed MV-22 to engage in this activity and watched her engaging in it, knowing that she was under the age of 18 and that other group members were recording it. MV-20 and MV-22 were in the Eastern District of Michigan when the Defendant and the group targeted them.

The Defendant, working with the group, successfully enticed dozens of minors to engage in masturbation and the lascivious display of the genitals on web camera. There are over 35 identified minor victims who reside in the United States. The Defendant also watched numerous child pornography videos of the targeted minors that others shared in the password protected chatrooms used by the group. The Defendant logged into these chatrooms in order to see the videos, and the Defendant also shared his own videos of child pornography with the group in these same chatrooms.

On March 14, 2019 a Judgement was entered imposing a sentence of 240-month imprisonment, followed by five (5) years supervised release. (R. 24, Judgment). On March 22, 2019 a Stipulation and Order regarding restitution was entered by this Honorable Court. (R. 25, Stipulation and Order).

In the case at bar, the Judgment was entered March 13, 2019, and the Stipulation and Order for Restitution was entered March 22, 2019. March 23, 2020 is calculated as the one-year statute of limitation with ten days added to March 13, 2019 to reflect the expiration of the notice of appeal.

In early 2020, the Coronavirus rapidly spread throughout the world, and thousands of people became infected with the disease. On January 30, 2020 the World Health Organization declared a Public Health Emergency of

4

International Concern, and by March 11, 2020, the World Health

Organization declared the virus a pandemic, as the virus was spreading to

most countries on six continents. (World Health Organization, January 30,

2020).

The coronavirus spread to the United States of America, and the

Secretary of Health and Human Services declared a public health emergency

on January 31, 2020, under section 319 of the Public Health Services Act

(42 U.S.C.247d) in response to the coronavirus. (U.S. Dept. of Health and

Human Services, January 31, 2020).

Beginning on March 1, 2020 the Coronavirus (COVID-19) outbreak

was declared a national emergency by the President of the United States.

(Proclamation No. 9994 of March 13, 2020).

In Michigan, on January 31, 2020 the Governor declared a state of

emergency. (Executive Order No. 2020-4). This Order was followed by

numerous orders closing Michigan schools on March 16, 2020, and

prohibiting people attending large events in shared spaces on March 13,

2020. (Executive Order No. 2020-20). Mitigation efforts continued and

people were advised to stay at home and restrictions were placed on the use

of public places from March 22, 2020 through April 13, 2020 (Executive

Order No. 2020-20). On March 24, 2020, the Governor temporarily

suspended activities that are not necessary to sustain or protect life through

April 13, 2020. (Executive Order No. 2020-21).

Courts and prisons throughout the United States began to swiftly restrict access to buildings in an effort to prevent further spread of the disease. Defendant, Marc Armbruster, is currently housed in Arizona at FCI Safford. FCI Safford has issued the following statement on its website, BOP.gov, "All visiting at this facility has been suspended until further notice." The Bureau of Prisons further stated that it is mitigating the risk of exposure created by visitors, and legal visits will be suspended for 30 days. (Bureau of Prisons, March 13, 2020).

The Michigan Supreme Court addressed all state court matters in an Order on March 18, 2020 limiting court functions to essential functions. (Administrative Order No. 2020-2). On March 26, 2020 the Michigan Supreme Court suspended all filing deadlines in the Michigan Supreme Court and the Court of Appeals until the expiration of the Governor's Order to suspend activities that are not necessary to sustain or protect life. (Administrative Order No. 2020-4).

The time for filing a section 2255 motion is one year from the date on which the judgment of conviction becomes final. 28 U.S.C. § 2255(f)(1). There is a split in the circuits as to when a judgment of conviction becomes final under Paragraph (6)(1) if no notice of appeal is filed. The majority have

held that "the judgment becomes final upon the expiration of the period in which the defendant could have appealed to the court of appeals." Sanchez-Castellano v. United States, 358 F.3d 424, 427 (6th Cir. 2004). Accord United States v. Prows, 448 F.3d 1223, 1227-28 (10th Cir. 2006); Moshier v. United States, 402 F.3d 116, 118 (2d Cir. 2005); Mederos v. United States, 218 F.3d 1252, 1253 (11th Cir. 2000); Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999). In most cases, that is ten days after the entry of judgment, when the time to file a notice of appeal has expired. See Fed. R. App. P. 4(b); Sanchez-Castellano, 358 F.3d at 427.

A motion is timely if filed within one year of "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action." Because the word "impediment" implies that an obstacle, obstruction, or hindrance is required, Paragraph (6)(2) is available only if the government's actions prevented the motion from being filed. See Minter v. Beck, 230 F.3d 663, 666 (4th Cir. 2000); United States v. Cottage, 307 F.3d 494, 500 (6th Cir. 2002).

Additionally, the Court in Solomon vs. the United States 467 F.3d 928 (6th Cir. 2006) set forth the following factors to determine whether equitable tolling of the statute of limitations is appropriate: (1) the petitioner's lack of

7

notice of the filing requirement; (2) the petitioner's lack of constructive

knowledge of the filing requirement; (3) diligence in pursuing one's rights;

(4) absence of prejudice to the respondent; and (5) the petitioner's

reasonableness in remaining ignorant of the legal requirement for filing his

claim. *Dunlap*, 250 F.3d at 1008 (adopting factors set forth in *Andrews v.*

*Orr,* 851 F.2d 146 (6th Cir. 1988)). These five factors are not comprehensive,

nor is each factor relevant in all cases. *Cook v. Stegdll*, 295 F3d 517, 521 (6th

Cir.), *cert. denied*, 537 U.S. 1091, 123 S. Ct. 699, 154 L.Ed.2d 638 (2002).

"The propriety of equitable tolling must necessarily be determined on a

caseby-case basis." *Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir.

1998).

This Honorable Court is not bound by Administrative Orders issued

by the Michigan Supreme Court, but in a time where state courts are

suspending deadlines, prisons are suspending legal visitation, the Governor

has closed schools and issued orders to stay at home unless the activity is

necessary to sustain or protect life, the United States has declared a national

emergency, this Honorable Court should find that this motion is timely filed.

The defendant is entitled to one year from the entry of Judgment,  or 365

days under the statute of limitations to file his 2255 Motion. He is entitled to

each and every one of those 365 days, and should not be penalized as a result

of this unusual and unprecedented pandemic. This motion is filed within

days of the one-year statute of limitations calculated as March 23, 2020 in the case at bar and this motion is timely filed as a result of defendant being hindered or impeded by federal and state orders as a result of a global pandemic.

### DEFENDANT'S CLAIM PURSUANT TO 21 USC SEC. 2255

The defendant asserts that he was denied effective assistance of counsel when his attorneys failed to obtain an expert evaluation to review, analyze, investigate, and provide expert opinions related to internet protocol address, software, technology, and equipment.

Further, defendant asserts that his attorneys failed to present and discuss potential defenses related to expert evaluation of internet protocol address, software, technology, and equipment which prevented him from making full and informed decisions regarding whether to file motions, accept a plea or proceed to trial, and assess the strengths of the Government's case before tendering a guilty plea.

Additionally, defendant asserts that his plea was not knowingly voluntarily, and intelligently made which is a requirement for it to be constitutionally valid.

Defendant further maintains that the Court failed to give an individualized sentence, was overly focused on the victim perspective, and testimony from other trials, and therefore failed to weigh 18 U.S.C. §

3553(a) factors such as decades of mental health diagnosis, childhood

trauma, 15 years military service, voluntary abandonment of involvement

with the dark website, and cooperation.

Lastly, Defendant maintains that he was denied effective assistance of

counsel because his attorneys did not make critical objections at the

sentencing hearing nor did they timely file a notice of appeal on his behalf.


ARGUMENT

I. INEFFECTIVE ASSISTANCE OF COUNSEL


A. INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE OBTAIN
   AN EXPERT TO ANALYZE, INVESTIGATE, AND PROVIDE EXPERT
   OPINIONS RELATED TO INTERNET PROTOCOL ADDRESS,
   SOFTWARE, TECHNOLOGY, AND EQUIPTMENT, AND FOR
   FAILURE TO PRESENT AND DISCUSS POTENTIAL DEFENSES
   RELATED TO INTERNET PROTOCOL ADDRESS, SOFTWARE,
   TECHNOLOGY, AND EQUIPTMENT, AND FAILURE TO DISCUSS
   DEFENSES RESULTED IN A GUILTY PLEA THAT WAS NOT MADE
   KNOWINGLY, INTELLIGENTLY, OR VOLUNTARILY AND
   THEREFORE WAS NOT CONSTITUTIONALLY VALID.

B. INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO MAKE
   CRITICAL OBJECTIONS DURING THE SENTENCING HEARING.

C. INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO
   TIMELY FILE A NOTICE OF APPEAL.

Title 28, Section 2255 of the United States Code provides that a

prisoner in custody under sentence of a federal court may file a motion in the

court that imposed the sentence to vacate, set aside, or correct the sentence.

A petitioner is entitled to relief under § 2255 if he proves by a

preponderance of the evidence one of the following: (1) that the sentence

was imposed in violation of the Constitution or laws of the United States;

(2) that the court was without jurisdiction to impose such sentence; (3) that

the sentence was in excess of the maximum authorized by law; or (4) that

the sentence is otherwise subject to collateral attack. See 28 U.S.C. §

2255(a); Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958) (per

curiam). "The scope of review of non-constitutional error is more limited

than that of constitutional error; a non-constitutional error does not provide a

basis for collateral attack unless it involves 'a fundamental defect which

inherently results in a complete miscarriage of justice,' or is 'inconsistent

with the rudimentary demands of fair procedure.

The Sixth Amendment guarantees defendants the right to effective

assistance of counsel. Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993)

(citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.

Ed. 2d 674 (1984)). Even so, "[t]he Constitution does not guarantee a

defendant a letter-perfect defense or a successful defense; rather, the

performance standard is that of reasonably effective assistance under the

circumstances then obtaining." United States v. Natanel, 938 F.2d 302, 309-

10 (1st Cir. 1991).

A defendant who claims that he was deprived of his Sixth Amendment right to effective assistance of counsel must prove:

(1) that his counsel's performance fell below an objective standard of reasonableness; and

(2) a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Strickland, 466 U.S. at 687-88, 694; see also United States v. Manon, 608 F.3d 126, 131 (1st Cir. 2010).

This same principle applies in the context of guilty pleas. See Hill v. Lockhart, 474 U.S. 52, 57, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). The Lockhart Court held that "the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel." Id. at 58; see also Padilla v. Kentucky 559 U.S. 356, 371 n.12, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010) ("In [Lockhart], the Court [*8] recognized—for the first time—that Strickland applies to advice respecting a guilty plea."). In the context of guilty pleas, the first prong of the Strickland test is just a restatement of the standard of attorney competence described above. Lockhart, 474 U.S. at 58.

The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the

"prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

After conviction and exhaustion or waiver of the right to direct appeal, the Court presumes that a petitioner stands fairly and finally convicted. See United States v. Cervantes, 132 F.3d 1106, 1109 (5th Cir. 1998) (citing United States v. Shaid, 937 F.2d 228, 231-32 (5th Cir. 1991) (en banc)). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). Under section 2255, a petitioner can collaterally challenge his conviction "only on issues of constitutional or jurisdictional magnitude." United States v. Willis, 273 F.3d 592, 595 (5th Cir. 2001).    The defendant, Marc Armbruster, asserts that his plea was not knowingly, voluntarily, and intelligently made which is a requirement for it to be constitutionally valid. United States v. Hernandez, 234 F.3d 252, 254 (5th Cir. 2000) (citing Boykin v. Alabama, 395 U.S. 238, 244, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969)). When determining whether a plea is voluntary, the court looks to all the relevant circumstances surrounding it. Matthew v. Johnson, 201 F.3d 353, 364 (5th Cir. 2000) (citing Brady v.

13

United States, 397 U.S. 742, 749, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970)).

The defendant pleading guilty must be competent, have notice of the charges against him, understand the consequences of his plea, have advice of competent counsel, and not be induced by promises or threats. Id. at 365. A defendant must also overcome the presumption of regularity and "great evidentiary weight" accorded to court records. See United States v. Abreo, 30 F.3d 29, 32 (5th Cir. 1994) (holding that signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether plea is entered voluntarily and knowingly). Moreover, a defendant ordinarily may not refute his sworn testimony given at a plea hearing while under oath. Cervantes, 132 F.3d at 1110.

Additionally,  defense counsel has a duty to seek and review all the discovery with the client.  In any ineffectiveness case, a particular decision not to investigate or review discovery with the defendant must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691. "Although counsel should conduct a reasonable investigation into potential defenses, Strickland does not impose a constitutional requirement that counsel uncover every scrap of evidence that could conceivably help their client." Tucker v. Ozmint, 350 F.3d 433, 442 (4th Cir. 2003) (quoting Green

v. French, 143 F.3d 865, 892 (4th Cir. 1998)).   However, to effectively

represent the defendant and to effectively communicate with the defendant,

defense counsel must conduct a reasonable investigation of law and facts in

a particular case, his strategic decisions are 'virtually unchallengeable" but

his communication with the defendant is imperative.  Powell v. Kelly, 562

F.3d 656, 670 (4th Cir. 2009) (quoting Strickland, 466 U.S. at 690).

In the case at bar, defendant did not have the opportunity to discuss

potential defenses related to internet protocol address, software, technology,

and equipment as a result of his attorneys failing to obtain in expert

evaluation to review, analyze, investigate, and provide expert opinions

related to internet protocol address, software, technology, and equipment.

Therefore, the defendant was not in a position to make full and informed

decisions regarding whether to file motions, accept a plea or proceed to trial,

and/or assess the strengths of the Government's case before tendering a

guilty plea. Without discussing potential defenses with his attorneys, the

defendant was not able to knowingly, voluntarily, and intelligently plead

guilty. Therefore, the guilty plea was not constitutionally valid if it not

knowingly, voluntarily, and intelligently made.

Additionally, Defense counsel was ineffective and failed to make

critical objections during sentencing. Specifically, the Government referred

to testimony and evidence from a co-defendants' jury trials, and a co-defendant Garrison's court file. This error made it difficult and confusing for the Court to separate evidence from the co-defendants' jury trials, and Defendant Armbruster's case. It is impossible to know which portions of testimony and evidence the jury used to arrive at a verdict, and while it may be appropriate for the court to use that testimony and evidence to sentence the co-defendants following trial, it is not appropriate to support a sentence for Defendant Armbruster. Defendant Armbruster did not get the benefit of cross examination in his co-defendants trials and it appears the Court and Government are referring to evidence and testimony that strictly pertains to the co-defendants cases. (R. 27 PgID 354-355).

Additionally, the Defendant maintains he was deprived effective assistance of counsel because a notice of appeal was not timely filed on his behalf following the entry of Judgment.

<u>II</u>.  THE TRIAL COURT FAILED TO FULLY AND COMPLETELY CONSIDER THE 3553(a) FACTORS WHEN IT IMPOSED ITS SENTENCE.

District courts are required to consider all factors and non-frivolous arguments brought to their attention by a defendant. <u>United States v. Simmons</u>, 587 F.3d 348, 361 (6th Cir. 2009); <u>United States v. Blackwell</u>, 459 F.3d 739, 774 (6th Cir. 2006).

This Court reviews criminal sentences for procedural and substantive reasonableness, <u>Gall v. United States,</u> 552 U.S. 38, 51, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007), using the deferential abuse-of-discretion standard of review, id. at 51-52. This is true "whether the sentence imposed is inside or outside the [Sentencing] Guidelines range," although a sentence outside the

Guidelines range is not entitled to a presumption of reasonableness. Id. at 51.

Improperly calculating the Guidelines range renders a sentence procedurally unreasonable. Id. A sentence may be substantively unreasonable if the district court chooses a sentence arbitrarily, relies on impermissible factors, or gives an unreasonable amount of weight to any one § 3553(a) factor. <u>United States v. Vowell</u>, 516 F.3d 503, 510 (6th Cir. 2008). Once an appellate court determines that a sentence is procedurally sound, the court assesses its substantive reasonableness. Gall, 552 U.S. at 51. This Court considers "the totality of the circumstances, including the extent of any variance from the Guidelines range." Id. This Court evaluates whether the "sentence is adequate, but not greater than necessary to accomplish the sentencing goals" set forth in 18 U.S.C. § 3553(a). <u>United States v. Cochrane</u>, 702 F.3d 334, 345 (6th Cir. 2012) (citation and internal quotation marks omitted).  <u>United States v. Patton</u>, 538 F. App'x 699, 703 (6th Cir.

2013)

A foundational principle of the sentencing procedure established in 18 U.S.C. § 3553 is that the sentence is to be individualized: the judge "must make an individualized assessment based on the facts presented." <u>Gall v. United States</u>, 552 U.S. 38, 50, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007). "In making that determination," this court stated in <u>United States vs. HerreraZuniga</u>, 571 F.3d 568 at 582 (2009): "the sentencing judge is obliged to consider the unique circumstances of the defendant's case in light of the factors set out by Congress in 18 U.S.C. § 3553(a)."

The § 3553(a) factors pertinent here are:
1)  the nature and circumstances of the offense and the history and characteristics of the defendant;
2)  the need for the sentence imposed —
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
3)  the kinds of sentences available;
4)  the kinds of sentence and the sentencing range established for -
        (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines -
* * * *
(5) any pertinent policy statement — * * * *
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; . . . .

While the sentencing judge need not list each of the § 3553(a) factors, the record must show that the judge actually considered those factors. See <u>United States v. McBride</u>, 434 F.3d 470, 476 n.3 (6th Cir. 2006) ("While the district court need not explicitly reference each of the section 3553(a) factors, there must still be sufficient evidence in the record to affirmatively demonstrate the court's consideration of them.") (emphasis supplied).

Thus, while something less than a factor-by-factor recitation is acceptable, something more than a simple and conclusory judicial assertion that the court has considered "the nature and circumstances of the offense and the history and characteristics of the defendant" is essential. Cf. <u>United States v. Vonner</u>, 516 F.3d 382, 389 (6th Cir. 2008) (en banc)

In the case at bar this is exactly the record we are left with, simple and conclusory assertions without a real and meaningful examination of the 3553 factors. Indeed, in the case of <u>United States v. Ferguson</u>, 518 F. App'x 458 (6th Cir. 2013) this Court reversed and remanded a similar record where there was little if any consideration of the kinds of sentences available; any pertinent policy statement; or, the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

It is true that a district court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [§ 3553(a)(2)]." 18 U.S.C. § 3553(a) but simply sentencing a defendant to the mid-range of an advisory guideline is not enough. The district court must consider all factors set out in § 3553(a) before imposing a sentence.  Under an abuse of discretion review, reversal based on substantive unreasonableness of a sentence is not warranted unless, "upon reviewing the record, we have a definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached upon weighing the relevant factors." United States v. Edwards, 595 F.3d 1004, 1015 (9th Cir. 2010) (internal quotation marks omitted).      In the case at bar, the Court spent significant time during the sentencing hearing giving weight to the victims situations, and the codefendant's trials. The Court noted hearing testimony pertaining to codefendants at trial, and the Court improperly used testimony from codefendants trials to determine Defendant Armbruster's sentence. (R. 27, PgID 340). Additionally, the Court stated that it heard 8 hours of victim testimony pertaining to another case. (R. 27, PgID 342). The Government detailed that Defendant Armbruster was a lesser player compared to the others (R. 27, PgID 356) but the focus throughout the hearing remained on testimony that took place in other hearings or trials, and

the victims. This did not give Defendant Armbruster the opportunity to have an individualized sentence.

Further, the court failed to consider Defendant Armbruster's impressive military service, the affects his combat training and experience had on him, prior mental health issues, childhood trauma, his cooperation in this case, his good behavior on bond, and the fact he did not have a trial, and accepted responsibility.

The Defendant's Sentencing Memorandum details that Defendant Armbruster had been diagnosed with bipolar disorder since the age of 14 and had been admitted into inpatient treatment, was dealing with intense mood instability, racing thoughts and effects of post-traumatic stress disorder (PTSD) without any family or professional support.  It was during this time that he was himself "recruited" from a legal website and directed to this dark website. (R. 21 PgID 96). The Court did not give weight to decades of mental health history that was provided, and rather focused on the victims.

Additionally, the Court could have used its discretion to impose a noncustodial sentence. The guidelines did not consider the fact Defendant Armbruster voluntarily abandoned the website activity after a short period of involvement.

The Defendant's Sentencing Memorandum suggested that this Court had the discretion to consider a non-custodial sentence.  Ironically, the

guidelines do not specifically take into consider the factors that warrant a significant variance.  The factors do not consider what sentence is sufficient but not greater than necessary when there is a short duration of involvement, exemplary personal history including military duty, extensive cooperation, mental health issues, and finally, conduct prior to an arrest that was not monitored and conduct after arrest that was monitored that demonstrates an abandonment of the illegal and improper activity charged. (R. 21 PgID 97). It does not appear that the Court considered these factors at sentencing.

A key component of Supreme Court law, designed to ensure that the guidelines are truly advisory and constitutional, is the authority of this Court to disagree with a guideline as a matter of policy.  Because "the Guidelines are now advisory . . ., as a general matter, courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines."  Kimbrough, 552 U.S. at 101-02 (internal punctuation omitted) (citing Rita v. United States, 551 U.S. 338, 351 (2007) (**district courts may find that the "Guidelines sentence itself fails properly to reflect § 3553(a) considerations"**).

As the Supreme Court held in Kimbrough, because "the cocaine Guidelines, like all other Guidelines, are advisory only," it "would not be an abuse of discretion for a district court to conclude when sentencing a

particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." Kimbrough, 552 U.S. at 91, 109-10; see also Spears v. United States, 555 U.S. 261, 267 (2009) ("[D]istrict courts are entitled to vary from the crack cocaine Guidelines in a mine-run case where there are no 'particular circumstances' that would otherwise justify a variance from the Guidelines' sentencing range.").

Congressionally directed guidelines are just as advisory as any other guideline and therefore equally subject to policy-based variances.  In Vazquez v. United States, 130 S. Ct. 1135 (2010), the Supreme Court remanded for reconsideration in light of then-Solicitor General Kagan's position that "all guidelines," including congressionally-directed guidelines, "are advisory, and the very essence of an advisory guideline is that a sentencing court may, subject to appellate review for reasonableness, disagree with the guideline in imposing sentencing under Section 3553(a)." U.S. Br. at 11, Vazquez v. United States, No. 09-5370 (Nov. 2009).  As the Sixth Circuit has previously recognized, "all of the sentencing guidelines are advisory," including those directed by Congress.  United States v. Michael, 576 F.3d 323, 327 (6th Cir. 2009) (emphasis in original).  Congressional directives "tell[] the Sentencing Commission, not the courts, what to do,"

and "a directive that the Commission specify a particular Guidelines range is not a mandate that sentencing courts stay within it."  Id. at 328.

CONCLUSION

WHEREFORE, the Defendant, MARC ARMBRUSTER, by and through his attorney, STEFANIE L. LAMBERT, PLLC, and hereby respectfully moves this Court pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence for the reasons so stated herein.

Respectfully submitted,

/s/ Stefanie Lambert Junttila
STEFANIE LAMBERT JUNTTILA
Attorney for Defendant,
     MARC ARMBRUSTER
500 Griswold Street, Suite 2340
Detroit, Michigan 48226
(248) 270-6689
  Email: attorneystefanielambert@gmail.com

Date:  April 1, 2020