UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                Case No. 18-cr-20538

vs.               Hon. Judith E. Levy

MARC ARMBRUSTER,

        Defendant.
_____/

KEVIN M. MULCAHY
United States Attorney's Office
211 W. Fort Street; Suite 2001
Detroit, MI 48226
313-226-9129
Email: kevin.mulcahy@usdoj.gov


STEFANIE LAMBERT JUNTTILA
Law Office of Stefanie L. Lambert, PLLC
500 Griswold Street, Ste. 2340
Detroit, MI 48226
(248) 270-6689
Email: attorneystefanielambert@gmail.com
_____/

**DEFENDANT, MARC ARMBRUSTER'S REPLY TO THE
GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO VACATE
SENTENCE PURSUANT TO 28 U.S.C. SECTION 2255**

Mr. Armbruster filed his Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 on April 1, 2020. This Honorable Court entered an Order requiring the Government to file a Response to Mr. Armbruster's Motion by May 18, 2020. (R. 31, PgID 418). The Government sought a 30-day adjournment, which was unopposed by Mr. Armbruster. This Honorable Court entered an Order extending the deadline for the government's brief to June 18, 2020. (R. 32, PgID 420). The Government filed a Response to Mr. Armbruster's Motion on June 18, 2020. Mr. Armbruster offers this Reply, and does not intend to waive any issue by not responding to contentions fully addressed in his Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255.

## ARGUMENT

### A. TIMELINESS

The Government incorrectly assets that Mr. Armbruster's motion is untimely. The complete judgement in the case at bar was not entered until March 22, 2019. On March 22, 2019, this Honorable Court entered a Stipulation and Order addressing restitution. Specifically, this Honorable Court ordered "Pursuant to the parties' stipulation, a restitution award in the amount of $5,000 per victim will be included in defendant's Judgment for the victims identified in this order." (R. 25, PgID 287). Therefore, the Judgement in this matter was entered as two

separate orders with the second portion of the Judgment entered on March 22, 2019.

The government correctly states that Mr. Armbruster's deadline to file a motion under section 2255 is one year from his deadline to file a notice of appeal. (R. 33, PgID 437).  However, the government incorrectly calculated the deadline for Mr. Armbruster to file his motion under section 2255. The government used the date the first portion of the Judgement which was entered on March 14, 2020, and added fourteen days calculating March 28, 2020 as Mr. Armbruster's deadline to file a motion under section 2255.

The correct deadline for Mr. Armbruster to file a motion under section 2255 is April 5, 2020. The correct calculation of Mr. Armbruster's deadline is one year plus fourteen days from March 22, 2020, the date the complete Judgment was entered by this Honorable Court. Therefore, the correct calculation of Mr. Armbruster's deadline would be April 5, 2020, and his April 1, 2020 motion was timely filed.

However, in the event this Honorable Court disagrees with Mr. Armbruster's calculation of his deadline to file his Section 2255 Motion, he respectfully requests the court to consider that his motion was filed during a global pandemic that required federal and state courts to close throughout the United States.  Mr.

Armbruster's motion was filed on April 1, 2020 and at that time, judges, prosecutors, defense attorneys, court reporters, and court staff were required work remotely, jails and prisons no longer permitted visitation, and inmates had been held in isolation for up to 23 hours per day to prevent the spread of COVID-19.

Mr. Armbruster timely requested transcripts to file his instant motion, and provided payment information at the time of his requests for transcripts. Court reporters have experienced challenges during the COVID-19 pandemic, and have been required to work from home and simultaneously care for their children. Mr. Armbruster's transcripts were not available for review until March 31, 2020, and Mr. Armbruster's motion was filed the very next day.

It is also important for the Court to consider that the government sought an extension to file its brief in light of the COVID-19 pandemic. Mr. Armbruster did not oppose the government's request for an extension. The defendant is entitled to one year from the entry of Judgment plus fourteen days to file his Section 2255 Motion. He is entitled to each and every one of those days, and should not be penalized as a result of this unusual and unprecedented pandemic.

The government correctly states that equitable tolling applies when a defendant diligently pursues his rights and an extraordinary circumstance prevented timely filing. *See Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745,

749 (6th Cir. 2011) citing *Holland v. Florida,* 130 S. Ct. 2549, 2562 (2010)

("*Holland's* two-part test has replaced *Dunlap's* five-factor inquiry as the

governing framework in this circuit for determining whether a habeas petitioner is

entitled to equitable tolling"). Certainly the COVID-19 worldwide pandemic, that

resulted in courts, schools, and businesses closing throughout the nation, meets the

definition of an extraordinary circumstance that would prevent timely filing.

Mr. Armbruster's ability to file his Section 2255 motion was complicated by

changes within the courts, prisons, and nearly every aspect of how we functioned

as a nation was complicated and changed for a period of time as a result of the

pandemic.

In early 2020, the Novel Coronavirus rapidly spread throughout the world,

and thousands of people became infected with the disease. On January 30, 2020 the

World Health Organization declared a Public Health Emergency of International

Concern, and by March 11, 2020, the World Health Organization declared the

virus a pandemic, as the virus was spreading to most countries on six continents.

(World Health Organization, January 30, 2020).

The novel coronavirus spread to the United States of America, and the

Secretary of Health and Human Services declared a public health emergency on

January 31, 2020, under section 319 of the Public Health Services Act (42

U.S.C.247d) in response to the coronavirus. (U.S. Dept. of Health and Human Services, January 31, 2020).

Beginning on March 1, 2020 the Coronavirus (COVID-19) outbreak was declared a national emergency by the President of the United States. (Proclamation No. 9994 of March 13, 2020).

In Michigan, on January 31, 2020 the Governor declared a state of emergency. (Executive Order No. 2020-4). This Order was followed by numerous orders closing Michigan schools on March 16, 2020, and prohibiting people attending large events in shared spaces on March 13, 2020. (Executive Order No. 2020-20). Mitigation efforts continued and people were advised to stay at home and restrictions were placed on the use of public places from March 22, 2020 through April 13, 2020 (Executive Order No. 2020-20). On March 24, 2020, the Governor temporarily suspended activities that are not necessary to sustain or protect life through April 13, 2020. (Executive Order No. 2020-21).

Courts and prisons throughout the United States began to swiftly restrict access to buildings in an effort to prevent further spread of the disease. Defendant, Marc Armbruster, is currently housed in Arizona at FCI Safford. FCI Safford has issued the following statement on its website, BOP.gov, "All visiting at this facility has been suspended until further notice." The Bureau of Prisons further stated that

6

it is mitigating the risk of exposure created by visitors, and legal visits will be suspended for 30 days. (Bureau of Prisons, March 13, 2020).

Mr. Armbruster's case is pending in the United States Federal Court Eastern District of Michigan. While the Federal Court is not bound by orders issued by the Michigan Supreme Court, it is helpful to consider that at the time of Mr. Armbruster's instant motion, the Michigan Supreme Court limited court functions to essential functions in an Order on March 18, 2020 (Administrative Order No. 2020-2). On March 26, 2020 the Michigan Supreme Court suspended all filing deadlines in the Michigan Supreme Court and the Court of Appeals until the expiration of the Governor's Order to suspend activities that are not necessary to sustain or protect life. (Administrative Order No. 2020-4).

## B. PLEA HEARING

The government incorrectly asserts that Mr. Armbruster failed to show that his lawyer's performance was deficient under prevailing professional norms. The Sixth Amendment guarantees defendants the right to effective assistance of counsel. Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Even so, "[t]he Constitution does not guarantee a defendant a letter-perfect defense or a successful defense; rather, the performance standard is that of reasonably effective

assistance under the circumstances then obtaining." United States v. Natanel, 938
F.2d 302, 309-10 (1st Cir. 1991).

A defendant who claims that he was deprived of his Sixth Amendment right
to effective assistance of counsel must prove:

(1) that his counsel's performance fell below an objective standard of
reasonableness; and

(2) a reasonable probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different.

Strickland, 466 U.S. at 687-88, 694; see also United States v. Manon, 608 F.3d
126, 131 (1st Cir. 2010).

This same principle applies in the context of guilty pleas. See Hill v.
Lockhart, 474 U.S. 52, 57, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). The Lockhart
Court held that "the two-part Strickland v. Washington test applies to challenges to
guilty pleas based on ineffective assistance of counsel." Id. at 58; see also Padilla
v. Kentucky 559 U.S. 356, 371 n.12, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010)
("In [Lockhart], the Court [*8] recognized—for the first time—that Strickland
applies to advice respecting a guilty plea."). In the context of guilty pleas, the first
prong of the Strickland test is just a restatement of the standard of attorney
competence described above. Lockhart, 474 U.S. at 58.

The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

After conviction and exhaustion or waiver of the right to direct appeal, the Court presumes that a petitioner stands fairly and finally convicted. See United States v. Cervantes, 132 F.3d 1106, 1109 (5th Cir. 1998) (citing United States v. Shaid, 937 F.2d 228, 231-32 (5th Cir. 1991) (en banc)). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). Under section 2255, a petitioner can collaterally challenge his conviction "only on issues of constitutional or jurisdictional magnitude." United States v. Willis, 273 F.3d 592, 595 (5th Cir. 2001).

Mr. Armbruster asserts that his plea was not knowingly, voluntarily, and intelligently made which is a requirement for it to be constitutionally valid. United States v. Hernandez, 234 F.3d 252, 254 (5th Cir. 2000) (citing Boykin v. Alabama, 395 U.S. 238, 244, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969)). When determining whether a plea is voluntary, the court looks to all the relevant circumstances

surrounding it. Matthew v. Johnson, 201 F.3d 353, 364 (5th Cir. 2000) (citing

Brady v. United States, 397 U.S. 742, 749, 90 S. Ct. 1463, 25 L. Ed. 2d 747

(1970)). The defendant pleading guilty must be competent, have notice of the

charges against him, understand the consequences of his plea, have advice of

competent counsel, and not be induced by promises or threats. Id. at 365.

In the case at bar, the government had alleged evidence of login data from a

website called Chateen, which was hosted in Spain.  The logs obtained by the

United States government were not obtained by law enforcement agencies in the

United States. All logs from the hosting service of Chateen were provided by the

Spanish National Police. (R. 33, PgID 426).

It's the government's position that the username JEREMY_FIVE is Mr.

Armbruster, and that "Chateen's logs showed the username JEREMY_FIVE

consistently logged in from the same IP address between April 2, 2015, and June

26, 2016. Most of these logins, moreover, were to chatrooms known to be known

to be associated with the Fans Group and with the so-called "base" chatroom that

the group used to strategize about the victims. (R. 33, PgID 426). The

government's alleged evidence shows that Mr. Armbruster spent most of his time

logged in with the adult Fans Group. The government agrees that the group of men

involved with Chateen existed for at least a year prior to Mr. Armbruster having any involvement. (R33, PgID 426).

In any ineffectiveness case, a particular decision not to investigate or review discovery with the defendant must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691. "Although counsel should conduct a reasonable investigation into potential defenses, Strickland does not impose a constitutional requirement that counsel uncover every scrap of evidence that could conceivably help their client." Tucker v. Ozmint, 350 F.3d 433, 442 (4th Cir. 2003) (quoting Green v. French, 143 F.3d 865, 892 (4th Cir. 1998)).   However, to effectively represent the defendant and to effectively communicate with the defendant, defense counsel must conduct a reasonable investigation of law and facts in a particular case, his strategic decisions are 'virtually unchallengeable" but his communication with the defendant is imperative.  Powell v. Kelly, 562 F.3d 656, 670 (4th Cir. 2009) (quoting Strickland, 466 U.S. at 690)

Mr. Armbruster's lawyer performance was deficient under prevailing professional norms, and was ineffective by failing to obtain an expert to evaluate the government's alleged evidence involving IP addresses, login information, software, technology, and equipment. An independent expert opinion of this alleged evidence from Spain was necessary to for Mr. Armbruster to evaluate the

strength and weakness of the government's case, and evaluate potential defenses. No experts were obtained by Mr. Armbruster's lawyer, potential defenses related to the expert were not discussed, and Mr. Armbruster was unable to evaluate the strength and weaknesses of the government's case and without doing so his guilty plea was not knowingly, intelligently, or voluntarily made.

Additionally, Mr. Armbruster's lawyer performance was deficient under prevailing professional norms and he was ineffective by failing to have an expert evaluate the government's alleged evidence obtained from a source outside of the United States. Any competent attorney would question, and investigate, through an expert, alleged evidence obtained from a foreign country to be offered by the government at trial, and especially question and investigate alleged evidence relating to internet protocol address, software, technology, and equipment obtained from Spain, and by the FBI. Again, without the benefit of the expert analysis of alleged evidence from Spain and the FBI, Mr. Armbruster's plea was not knowingly, intelligently, or voluntarily made.  Had Mr. Armbruster had the benefit of the expert opinion he would have been able to discuss the strength and weaknesses of the government's case, potential defenses and he would have insisted on going to trial.

In the case at bar, defendant did not have the opportunity to discuss potential defenses related to internet protocol address, software, technology, and equipment as a result of his attorneys failing to obtain in expert evaluation to review, analyze, investigate, and provide expert opinions related to internet protocol address, software, technology, and equipment provided by Spain and the FBI. Therefore, the defendant was not in a position to make full and informed decisions regarding whether to file motions, accept a plea or proceed to trial, and/or assess the strengths of the Government's case before tendering a guilty plea. Without discussing potential defenses with his attorneys, the defendant was not able to knowingly, voluntarily, and intelligently plead guilty. Therefore, the guilty plea was not constitutionally valid if it not knowingly, voluntarily, and intelligently made.  Had Mr. Armbruster had the benefit of the expert opinion  he would not have pleaded guilty and would have insisted on going to trial. Mr. Armbruster's lawyer's performance was deficient under prevailing professional norms.

## C. SENTENCING HEARING

The government incorrectly characterizes Mr. Armbruster's position regarding his attorney's failure to object at his sentencing hearing. Mr. Armbruster argues that he did not receive an individualized sentence, and his attorney should have objected to the majority of Mr. Armbruster's hearing being focused on the co-defendant's trials, cooperation, ect. Mr. Armbruster respectfully argues that a trial

judge becomes intimately familiar with testimony of witnesses during the trials of his co-defendants, and his sentence should have been individualized and limited to his testimony, and plea agreement. District courts are required to consider all factors and non- frivolous arguments brought to their attention by a defendant. United States v. Simmons, 587 F.3d 348, 361 (6th Cir. 2009); United States v. Blackwell, 459 F.3d 739, 774 (6th Cir. 2006).

Additionally, the government incorrectly characterizes Mr. Armbruster's argument regarding the Court's sentence that he is simply stating the Court "got it wrong." Mr. Armbruster's sentencing focused on the co-defendant's and their trials rather than carefully considering section 3355(a) factors.

This Court reviews criminal sentences for procedural and substantive reasonableness, Gall v. United States, 552 U.S. 38, 51, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007), using the deferential abuse-of-discretion standard of review, id. at 51-52. This is true "whether the sentence imposed is inside or outside the [Sentencing] Guidelines range," although a sentence outside the Guidelines range is not entitled to a presumption of reasonableness. Id. at 51. Improperly calculating the Guidelines range renders a sentence procedurally unreasonable. Id. A sentence may be substantively unreasonable if the district court chooses a sentence arbitrarily, relies on impermissible factors, or gives an unreasonable amount of

weight to any one § 3553(a) factor. United States v. Vowell, 516 F.3d 503, 510

(6th Cir. 2008). Once an appellate court determines that a sentence is procedurally

sound, the court assesses its substantive reasonableness. Gall, 552 U.S. at 51. This

Court considers "the totality of the circumstances, including the extent of any

variance from the Guidelines range." Id. This Court evaluates whether the

"sentence is adequate, but not greater than necessary to accomplish the sentencing

goals" set forth in 18 U.S.C. § 3553(a). United States v. Cochrane, 702 F.3d 334,

345 (6th Cir. 2012) (citation and internal quotation marks omitted). United States

v. Patton, 538 F. App'x 699, 703 (6th Cir. 2013) A foundational principle of the

sentencing procedure established in 18 U.S.C. § 3553 is that the sentence is to be

individualized: the judge "must make an individualized assessment based on the

facts presented." Gall v. United States, 552 U.S. 38, 50, 128 S. Ct. 586, 169 L. Ed.

2d 445 (2007). "In making that determination," this court stated in United States

vs. HerreraZuniga, 571 F.3d 568 at 582 (2009): "the sentencing judge is obliged to

consider the unique circumstances of the defendant's case in light of the factors set

out by Congress in 18 U.S.C. § 3553(a)."

The § 3553(a) factors pertinent here are:
1) the nature and circumstances of the offense and the history and

characteristics of the defendant;
2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
3) the kinds of sentences available;
4) the kinds of sentence and the sentencing range established for-

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines -

****
(5) any pertinent policy statement — * * * *
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; . . . .

While the sentencing judge need not list each of the § 3553(a) factors, the record must show that the judge actually considered those factors. See United States v. McBride, 434 F.3d 470, 476 n.3 (6th Cir. 2006) ("While the district court need not explicitly reference each of the section 3553(a) factors, there must still be sufficient evidence in the record to affirmatively demonstrate the court's consideration of them.") (emphasis supplied).

Thus, while something less than a factor-by-factor recitation is acceptable, something more than a simple and conclusory judicial assertion that the court has considered "the nature and circumstances of the offense and the history and characteristics of the defendant" is essential. Cf. United States v. Vonner, 516 F.3d 382, 389 (6th Cir. 2008) (en banc)

In the case at bar this is exactly the record we are left with, simple and conclusory assertions without a real and meaningful examination of the 3553 factors. Indeed, in the case of United States v. Ferguson, 518 F. App'x 458 (6th Cir. 2013) this Court reversed and remanded a similar record where there was little if any consideration of the kinds of sentences available; any pertinent policy statement; or, the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

It is true that a district court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [§ 3553(a)(2)]." 18 U.S.C. § 3553(a) but simply sentencing a defendant to the mid-range of an advisory guideline is not enough. The district court must consider all factors set out in § 3553(a) before imposing a sentence. Under an abuse of discretion review, reversal based on substantive unreasonableness of a sentence is not warranted unless, "upon reviewing the record, we have a definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached upon weighing the relevant factors." United States v. Edwards, 595 F.3d 1004, 1015 (9th Cir. 2010) (internal quotation marks omitted). In the case at bar, the Court spent significant time during the sentencing hearing giving weight to the victims situations, and the codefendant's trials. The Court noted hearing testimony pertaining to codefendants at trial, and the Court improperly used testimony from

codefendants trials to determine Defendant Armbruster's sentence. (R. 27, PgID 340). Additionally, the Court stated that it heard 8 hours of victim testimony pertaining to another case. (R. 27, PgID 342). The Government detailed that Defendant Armbruster was a lesser player compared to the others (R. 27, PgID 356) but the focus throughout the hearing remained on testimony that took place in other hearings or trials, and the victims. This did not give Defendant Armbruster the opportunity to have an individualized sentence.

Further, the court failed to consider Defendant Armbruster's impressive military service, the affects his combat training and experience had on him, prior mental health issues, childhood trauma, his cooperation in this case, his good behavior on bond, and the fact he did not have a trial, and accepted responsibility.

The Defendant's Sentencing Memorandum details that Defendant Armbruster had been diagnosed with bipolar disorder since the age of 14 and had been admitted into inpatient treatment, was dealing with intense mood instability, racing thoughts and effects of post-traumatic stress disorder (PTSD) without any family or professional support. It was during this time that he was himself "recruited" from a legal website and directed to this dark website. (R. 21 PgID 96). The Court did not give weight to decades of mental health history that was provided, and rather focused on the victims.

Additionally, the Court could have used its discretion to impose a noncustodial sentence. The guidelines did not consider the fact Defendant Armbruster voluntarily abandoned the website activity after a short period of involvement.

The Defendant's Sentencing Memorandum suggested that this Court had the discretion to consider a non-custodial sentence. Ironically, the guidelines do not specifically take into consider the factors that warrant a significant variance. The factors do not consider what sentence is sufficient but not greater than necessary when there is a short duration of involvement, exemplary personal history including military duty, extensive cooperation, mental health issues, and finally, conduct prior to an arrest that was not monitored and conduct after arrest that was monitored that demonstrates an abandonment of the illegal and improper activity charged. (R. 21 PgID 97). It does not appear that the Court considered these factors at sentencing.

A key component of Supreme Court law, designed to ensure that the guidelines are truly advisory and constitutional, is the authority of this Court to disagree with a guideline as a matter of policy. Because "the Guidelines are now advisory . . ., as a general matter, courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines."

Kimbrough, 552 U.S. at 101-02 (internal punctuation omitted) (citing Rita v. United States, 551 U.S. 338, 351 (2007) (**district courts may find that the "Guidelines sentence itself fails properly to reflect § 3553(a) considerations"**).

As the Supreme Court held in Kimbrough, because "the cocaine Guidelines, like all other Guidelines, are advisory only," it "would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." Kimbrough, 552 U.S. at 91, 109-10; see also Spears v. United States, 555 U.S. 261, 267 (2009) ("[D]istrict courts are entitled to vary from the crack cocaine Guidelines in a mine-run case where there are no 'particular circumstances' that would otherwise justify a variance from the Guidelines' sentencing range."). Congressionally directed guidelines are just as advisory as any other guideline and therefore equally subject to policy-based variances. In Vazquez v. United States, 130 S. Ct. 1135 (2010), the Supreme Court remanded for reconsideration in light of then-Solicitor General Kagan's position that "all guidelines," including congressionally-directed guidelines, "are advisory, and the very essence of an advisory guideline is that a sentencing court may, subject to appellate review for reasonableness, disagree with the guideline in imposing sentencing under Section 3553(a)." U.S. Br. at 11, Vazquez v. United States, No. 09-5370 (Nov. 2009). As the Sixth Circuit has

previously recognized, "all of the sentencing guidelines are advisory," including those directed by Congress. United States v. Michael, 576 F.3d 323, 327 (6th Cir. 2009) (emphasis in original). Congressional directives "tell[] the Sentencing Commission, not the courts, what to do," and "a directive that the Commission specify a particular Guidelines range is not a mandate that sentencing courts stay within it." Id. at 328.

### D. NOTICE OF APPEAL

Mr. Armbruster's attorney failed to file a notice of appeal within fourteen days of entry of judgment. It is routine and standard for counsel to file a notice of appeal within fourteen days to protect their clients ability to file a timely appeal. Mr. Armbruster's attorney should have filed his notice of appeal to protect Mr. Armbruster's ability to timely file. Of course Mr. Armbruster did not indicate on the record at sentencing that he wanted an appeal. It would be unreasonable to expect him to ask legal questions during the proceeding while processing the Court's statements and rulings.

WHEREFORE, the Defendant, MARC ARMBRUSTER, by and through his attorney, STEFANIE L. LAMBERT, respectfully moves this Court pursuant to 28

U.S.C. § 2255 to vacate, set aside, or correct his sentence for the reasons so stated herein.

Respectfully submitted,

/s/ Stefanie Lambert Junttila
STEFANIE LAMBERT JUNTTILA
Attorney for Defendant,
    MARC ARMBRUSTER
500 Griswold Street, Suite 2340
Detroit, Michigan 48226
(248) 270-6689
Email: attorneystefanielambert@gmail.com

Date:  July 9, 2020

<u>Certificate of Service</u>

     I, Stefanie Lambert Junttila, attorney at law, certify that on July 9, 2020, I caused a copy of this pleading to be served upon the Clerk of the Court and Government via E-file.

/s/ Stefanie Lambert Junttila
Stefanie Lambert Junttila (P71303)
